IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No.   11-cv-01232-CMA-MEH

UNITED STATES OF AMERICA,

       Plaintiff,

v.

**1401 EAST  VIRGINIA AVENUE, DENVER, COLORADO**
**57 LAKE RIDGE CIRCLE #1844, KEYSTONE, COLORADO,**
**$251,805.00 IN UNITED STATES CURRENCY,**
**$450,060.00 IN UNITED STATED CURRENCY,**
**$450,000.00 IN UNITED STATES CURRENCY,**
**$50,000.00 IN UNITED STATES CURRENCY,**
**ONE SILVER BAR AND 13 MISCELLANEOUS COINS,**
**$68,690.00 IN UNITED STATES CURRENCY,**
**$8,372.00 IN UNITED STATES CURRENCY**

       Defendant.

_____

**CLAIMANT DANIEL DINNER'S RESPONSE OBJECTING IN PART**
**TO GOVERNMENT'S MOTION TO STAY CASE**
_____

Claimant Daniel Dinner ("Dinner"), by counsel William L. Taylor of Ridley, McGreevy & Winocur, P.C., hereby responds objecting in part and acquiescing in part to the Government's Motion to Stay Case, and in support asserts as follows:

**INTRODUCTION**

The United States seeks a stay of the this case for ninety days and specifically seeks to stay the current briefing schedule and motions hearing set on Mr. Dinner's constitutional law claims.  Doc. 40, at 10-11.  As noted in the Government's Motion, Mr. Dinner does not object to a stay of 90 days on civil discovery, *i.e.*, discovery under Title

1

V of the Federal Rules of Civil Procedure.  Mr. Dinner does, however, object to the stay sought by the Government on the briefing schedule and motions hearing set on his constitutional claims.  He disagrees with the Government's characterization of that hearing as "discovery."  *See*  Doc. 40, at  7.  Mr. Dinner proposes this partial stay because he believes that adjudication of his constitutional claims in one suppression hearing will drive settlement in this case without *any* discovery being taken under the Rules of Civil Procedure.  Such a result will serve the interests of judicial economy, and save the parties the unnecessary expenditure of time and money involved in conducting civil discovery on the way to resolution of this case.

## BACKGROUND

The Government suggests that the Colorado Bureau of Investigation's investigation of a "large-scale" illegal gambling operation that began in 2007 was an investigation of Mr. Dinner.  Doc. 40, at 1.  In fact, the CBI investigation to which the Government apparently alludes was an investigation entirely different from the CBI's investigation of Mr. Dinner.  That investigation culminated in indictments sought by the Colorado Attorney General's Office.  Those cases had nothing to do with Mr. Dinner or any "operation" he is alleged to have been involved in, or the case brought by the Jefferson County District Attorney's Office against Mr. Dinner.  The CBI actually began to investigate Mr. Dinner in December of 2009.

The Government is also incorrect in its characterization of this investigation as a "state" investigation, or at least in the implication that there was not joint state-federal investigative activity.  *See, e.g.,* Doc. 40, at 2 ("extensive state investigation" and "CBI

2

investigators executed State search warrants") and 4 (""It makes sense that Dinner's challenges to the methods by which the State conducted its investigation be heard in state court.")  Both federal and state investigative agencies participated in the investigation.  According to the Jefferson County District Attorney's Office, the Federal Bureau of Investigation ("FBI") installed a GPS device on Mr. Dinner's vehicle - - without a search warrant - - during the course of the investigation.[1]  Although the Government recites that "on March 29, 2011, CBI investigators executed State search warrants . . .[,]" Doc. 40, at 2, said warrants were, in fact, executed by agents of the FBI, the United States Internal Revenue Service ("IRS"), the CBI, and other municipal police departments.

The first action filed in any court against Mr. Dinner was this federal forfeiture action.  The Government filed its Verified Complaint for Forfeiture *In Rem* on May 9, 2011.  Doc. 1.  The state grand jury indictment against Mr. Dinner was returned in Jefferson County more than a month and a half after this suit was initiated.

Since the Government filed its Motion to Stay Case, the schedule in Jefferson County has changed.  A hearing on motions is now scheduled for March 20, 2012.  The trial date did not change - - Mr. Dinner's case is still set for a trial to jury on April 16, 2012 (not April 9, 2012 as the Government recites, Doc. 40, at 2).  Mr. Dinner has had or will have complete discovery under the Colorado Rules of Criminal Procedure in his state case by the date of the motions hearing set herein.  The prosecution has provided

---

[1] _/ State prosecutors have been ordered to make full discovery to Mr. Dinner concerning the FBI's warrantless GPS device not later than March 2, 2012.

approximately nine gigabytes of grand jury transcripts, police reports, search warrant affidavits, surveillance photos and reports, among other materials.

There is a substantial likelihood that Mr. Dinner's state criminal case will be resolved without a motions hearing. The parties there have met and conferred about a bargained-for disposition. The undersigned expects to receive a final settlement offer from the prosecution (which offer likely will be revoked if Mr. Dinner goes to hearing in that case) at or near the time that the prosecution discloses information about the FBI's warrantless GPS device on March 2, 2012. It is, therefore, hardly a given that there will be any constitutional litigation in the state court proceeding.

Under the unique circumstances of this case – a simultaneously pending state racketeering indictment, a federal civil forfeiture case, and a federal criminal tax evasion investigation (apparently in its infancy) - the most expeditious way to arrive at a negotiated settlement in this lawsuit is not the laborious civil discovery process that neither Mr. Dinner nor the Government want to undertake at this time. Rather, a motions hearing and a ruling by the Court in this case on Mr. Dinner's constitutional claims likely will drive an early settlement of this matter, without full-blown civil discovery or summary judgment practice.

## COLLATERAL ESTOPPLE

The Government's Motion to Stay is, in the first instance, based upon a collateral estoppel argument. Doc. 40, at 4-6.

Mr. Dinner has no quarrel with the elements of the collateral estoppel doctrine as presented by the Government. Collateral estoppel bars a claim if "(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." *Moss v. Kopp*, 559 F.3d 1155, 1161 (10th Cir. 2009); Doc. 40, at 4.

The Government's analysis under this elemental framework suffers from a series of fallacious premises, however. First, the Government mistakenly assumes or implies the identity of the issues to be litigated. The Government asserts that Mr. Dinner will litigate fully the alleged constitutional violations in state court. Doc. 40, at 4. Given that Mr. Dinner's constitutional motions are not due until February 13, 2012, the Government cannot necessarily be faulted for this mistaken assumption; it has not yet seen Mr. Dinner's motion in this case.

Mr. Dinner's motion to suppress and dismiss in state court pleads not only federal constitutional grounds for relief, but also claims based on similar, yet *more protective* provisions of the Colorado Constitution. This court may not even have jurisdiction over such state law claims. *See Young v. New York City Transit Authority*, 903 F.2d 146, 164 (1991) (federal court had no jurisdiction to determine constitutionality of state statute under New York constitution under doctrine of pendent jurisdiction). It is certainly not a given that the State court will even reach the federal constitutional claims

5

raised there by Mr. Dinner. The Jefferson County District Court could base a suppression ruling in Mr. Dinner's favor exclusively on the more protective Colorado constitutional claims. Second, Mr. Dinner's papers in state court presently contain no Fourth Amendment argument under *United States v. Jones*, and may never do so. Briefing on the subject may never be necessary, depending on the state prosecutor's analysis of the significance of that problem for the State, and the settlement offer the prosecutor accordingly makes.

Next, the government assumes that the ruling by the Jefferson County District Court will constitute a final adjudication of Mr. Dinner's claims on the merits. Such an assertion will not necessarily be true, whether Mr. Dinner prevails on the motion or the Government prevails on the motion. If Mr. Dinner prevails, and the State suffers the suppression of evidence, the State will have interlocutory appellate rights. If the State prevails, Mr. Dinner will have appellate rights, assuming that he preserves such rights by going to trial. Under this scenario, the Government's 90-day stay on briefing and hearing the constitutional issues would turn into an indefinite stay. This case would then linger on the Court's docket until the state court criminal action parties have finished finally litigating the matter. Better that this Court address the issues now, and speed this case to settlement.

While the Government asserts that Mr. Dinner "elected to file his suppression motion first in state court," Doc. 40, at 5, in fact, Mr. Dinner was ordered by the Jefferson County District Court to file his motion in the state court not later than January 17, 2012. Mr. Dinner has not been the party deciding where and when to bring suit - -

in any forum.  He merely seeks to proceed as expeditiously as possible in concluding this case - - brought not by him, but by the Government, before he was indicted in state court.  The Government's reliance on *Microsoft Computer Systems, Inc. v. Ontel Corp.*, 686 F.2d 531, 538 (7th Cir. 1982), Doc. 40, at 5-6, in support of its "first-filed" argument seems particularly odd here.   That case involved the stay of an identical civil lawsuit in federal court after private parties first sued each other on identical grounds in a state court civil action.  *Id.,* at 538.  One party just beat the other to the state courthouse, after which the other party filed a federal diversity action.  If one can distill a "first-filed" rule from that opinion, it would seem to suggest that here, in this "first-filed" federal civil forfeiture case, Mr. Dinner should be allowed to go forward on his constitutional claims.  In truth, the case is simply entirely distinguishable from, and inapposite to this case.

## STAY UNDER 18 U.S.C. § 981(g)(1)

The Government also seeks a stay under 18 U.S.C. § 981(g)(1), Doc. 40, at 6, which provides  that, "[u]pon motion of the United States, the court shall stay the civil forfeiture proceeding if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related case."  The Government has failed to meet its burden under the statute in establishing its entitlement to a stay, at least as to the hearing on motion sought by Mr. Dinner.

7

**Related Prosecution**

Mr. Dinner does not contest the notion that the Jefferson County criminal prosecution is "related" to this civil forfeiture case in the sense that involves a similar body of facts and evidence. He asserts only that the state prosecution is not related in the sense contemplated by Section 981(a)(1) as a prosecution conducted by "the Government," meaning the United States Government. The Government has failed to offer any binding authority to support its interpretation that the term "the Government" in Section 981(g)(1) means the Jefferson County District Attorney's Office, as opposed to the United States Government.

Instead, the Government offers but one point of persuasive authority from another district court in another circuit – *United States v. Approximately $144,001 in United States Currency*, No. C 09-04182 JSW, 2010 WL 1838660, at *2 (N.D. Cal. May 3, 2010). Doc 40, at 7, n.1. This case is not very helpful, however, as the court there simply dismisses the Claimant's argument that "Government" means only the federal government without any analysis.

The Government also points to other cases pending in the District of Colorado where claimants subject of state criminal proceedings have sought a stay have relied upon Section 981(g)(1). Mr. Dinner submits that such anecdotal evidence should be afforded no weight whatsoever, certainly not the weight of precedent. It is of no moment what other claimants in other cases may have chosen to do.

8

Mr. Dinner submits that the term "Government" should be construed to mean only the United States Government. Although undersigned has located no judicial opinions on point in support of this contention, an examination of Section 981(g)(1) specifically, and of Title 18 generally supports this interpretation. The term "the Government" is used throughout Section 981 when the context of the statute clearly refers to "the Government" as the party bringing a forfeiture action under Section 981. For example, Section 981(g)(1) refers to the "the ability of **the** Government" to prosecute or investigate. (Emphasis added.) Section 981(g)(5) grants to "**the** Government" the ability to submit evidence *ex parte* in support of a motion to stay. (Emphasis added.) Section 981(g)(7) addresses "**the** Government's" ability to object to standing of a claimant. (Emphasis added.) These references are clearly to the United States Government, i.e., the party plaintiff to an action brought under this forfeiture statute. Clearly no state government is empowered by this section to bring such an action, nor is a Colorado Judicial District Attorney.

Elsewhere in Section 981, when Congress wanted to distinguish between different kinds of governments, it showed itself capable of using adjectives to denote that. *See, e.g.,* Section 981(a)(1)(G)(iv) ("any foreign Government).

The clear contextual meaning of "the Government" in Section 981 is buttressed by an examination of other portions of Title 18. A reading of other parts of Title 18 indicate that Congress routinely employs modifiers to the term "Government" to identify which government it means. *See, e.g.,* 18 U.S.C. § 202 (government employee means employee of the United States government); 18 U.S.C. § 666 (differentiating between

9

state, local and Indian tribal governments); 18 U.S.C. § 1030(e)(2)(A) ("protected computer" means one used by, *inter alia*, the United States Government, a/k/a "the Government").

Section 981is codified in Title 18 of the United States Code – "Crimes and Criminal Procedure" - the criminal code of the United States.  As such, Section 981(a)(1) should be construed as any other criminal statute – *narrowly*.  A narrow construction of this statute precludes a broad reading of the term "the Government"  to include state or local governments absent some indication that Congress intended to define it so broadly.  Mr. Dinner submits that "the Government," as used in Section 981(g)(1), in context, unambiguously refers to "the Government" of the United States.  To the extent the term is ambiguous or susceptible of an alternate interpretation, the rule of lenity prescribes that the statute be strictly construed.  *See United States v. Santos*, 553 U.S. 507, 514 (2008).

## Adverse Effect on State Prosecution

Second, even assuming, *arguendo,* that the state criminal prosecution is "a related prosecution" as contemplated by Section 981(a)(1), the Government has failed to make the required showing that the hearing sought by Mr. Dinner would adversely affect the pending state prosecution of Mr. Dinner.

As a preliminary matter, as noted here, and at the status hearing on January 6, 2012, Mr. Dinner  seeks no discovery in this case at this time.  He has already had, or will have by the time of the hearing set in this case, completely adequate discovery in

the state prosecution. As far as the undersigned can determine, all of the authority cited by the Government concerning the adverse effect the Government will suffer addresses situations where a Claimant wanted to proceed with civil discovery under Title V of the Federal Rules of Civil Procedure. None appear to address a situation, where, as here, a claimant simply wants one hearing to adjudicate suppression claims, with no discovery under the civil rules at all. The Government's characterization of the hearing sought as "discovery" does not make it so, and the Government offers no specific authority to support that characterization.

The Government must make an actual showing that civil discovery will adversely affect the state prosecution. *United States v. Currency $716,502.44*, 08-CV-11475, 2008 WL 5158291, at *1 (E.D. Mich. Dec. 5, 2008).

The Government has not specifically articulated, let alone made a showing, that there will be any adverse effect on the state prosecution. The Government recites Deputy District Attorney Pautler's concern that state law enforcement officers will have to prepare for and participate in federal and state litigation "at the same time." In the first case, it is in the ordinary course of any law enforcement officer's professional duties to give testimony in court. They are duly compensated for such testimony, whether on duty or off. The motions hearings set in this matter and the state criminal proceeding are not scheduled "at the same time." They are set weeks apart. Even if one were to grant that the inconvenience to a state law enforcement officer of going once to federal court and once to state court to give truthful testimony on a matter he or she investigated constitutes an extraordinary inconvenience, this fails to establish any

adverse effect whatsoever on the ability of the Jefferson County District Attorney to conduct the state prosecution.

Similarly, the concern voiced by Deputy District Attorney Pautler that the hearing and testimony "would otherwise not be available to any other defendant in state court pursuant to Colorado Rules of Criminal Procedure" may raise issues of relative fairness to other state criminal defendants, but it fails to demonstrate any adverse impact on Mr. Pautler's ability to conduct his prosecution of Mr. Dinner.  The Colorado Rules of Criminal Procedure, and Colorado's criminal procedure statutes entitle Mr. Dinner to a suppression hearing, at which he would get any additional "discovery" that the Government or Mr. Pautler appear to be concerned about.  So long as the law enforcement officers testify truthfully, as Mr. Dinner assumes they will, it is hard to imagine what additional benefit or "discovery" Mr. Dinner will obtain, or what adverse impact such testimony could have on the state prosecution.

Regardless, it is not Mr. Dinner's burden to imagine such an adverse impact on the state prosecution; it is the Government's burden to demonstrate it.  "[M]ere conclusory allegations of *potential* abuse or simply the *opportunity* by the claimant to improperly exploit civil discovery … will not avail on a motion for a stay."  *United States v. Leasehold Interests in 118 Avenue D,* 754 F.Supp. 282, 287 (E.D.N.Y.1990) (emphasis in original).  Although the Government is no longer required to show "good cause" why a stay is appropriate, it should at least be required to make a specific showing of harm the state prosecution will suffer; conclusory and amorphous assertions are insufficient.  *See United States v. All Funds ($357,311.68) Contained in N. Trust*

*Bank of Florida Account No. 7240001868*, CIV.A.3:04-CV-1476-G, 2004 WL 1834589 (N.D. Tex. Aug. 10, 2004).

**WHEREFORE**, Claimant Daniel Dinner respectfully requests that this Court enter an order (1) denying the Government's motion for a stay of the current briefing schedule and motions hearing set on his constitutional law claims, but (2) otherwise granting a stay of discovery for 90 days for both sides in this case.

Dated:  February 10, 2012

                                            Respectfully submitted,

                                            */s/ William L. Taylor*
                                            William L. Taylor, #21098
                                            Attorney for Dan Dinner
                                            RIDLEY, MCGREEVY & WINOCUR P.C.
                                            303 16th Street, Suite 200
                                            Denver, CO  80202
                                            Telephone:  (303) 629-9700
                                            Fax:  (303) 629-9702
                                            E-Mail:  wltaylorpc@gmail.com;
                                            taylor@ridleylaw.com
                                            *Attorney for Claimant Daniel Dinner*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 10, 2012, I served a true and correct copy of the foregoing **CLAIMANT DANIEL DINNER'S RESPONSE OBJECTING IN PART TO GOVERNMENT'S MOTION TO STAY CASE** via CM/ECF filing addressed to the following:

**Tonya Shotwell Andrews**
U.S. Attorney's Office-Denver
1225 17th Street East
#700
Denver, CO 80202
303-454-0100
303-454-0402 (fax)
Tonya.Andrews@usdoj.gov
  *Attorney for Plaintiff*

**Martha Ann Paluch**
U.S. Attorney's Office-Denver
1225 17th Street East
Seventeenth Street Plaza
#700
Denver, CO 80202
303-454-0100
303-454-0402 (fax)
Martha.Paluch@usdoj.gov
  *Representing Plaintiff*

**Mitchell Baker**
Mitch Baker, Attorney at Law
1543 Champa Street
#400
Denver, CO 80202
303-592-7353
303-571-1001 (fax)
mitchbaker@estreet.com
  *Attorney for Claimant Ginger Dinner*

**Karl J. Geil**
Karl J. Geil, P.C.
621 17th Street
Suite 2655
Denver, CO 80293
303-295-6261
303-298-0716 (fax)
karl_geil@prodigy.net
  *Representing Claimant Shelly Lynn Elick*

                    *s/ William L. Taylor*